G. D. COLTON

v.

JOHN A. WISE.

</div>

1.  SALE—RETURN OF CHATTEL TAKEN ON TRIAL.—Where a party, desiring to purchase a horse, sent his son to the vendor to send the horse to him, on trial, and if he liked it he would keep it, and the vendor requested the horse to be returned to him by a certain day or he would consider it a sale; to which the son did not consent, but said he thought his father would want to keep the horse longer than the time mentioned, and the horse was not returned until after the time mentioned; *held*, that there was no evidence to show that the son had authority to bind the father to return the horse by a specified time, and that the relation of the parties was merely that of bailor and bailee.

2. OPTION TO PURCHASE—BAILMENT.—A mere option on the part of one person to purchase a horse if he likes it, and taking the horse upon trial, constitutes a bailment and not a sale.

3. CARE REQUIRED OF BAILEE.—The bailment in such a case not being gratuitous, but contemplating a mutual benefit, imposes upon the bailee only the obligation of ordinary care in keeping and returning the animal. A return of the horse by an agent to another agent who was to take it to the owner, is not a want of ordinary care.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.   Opinion filed December 4, 1880.

Messrs. WILLIAMS & LAWRENCE, for appellant; that this was a case of bailment, and the bailee was bound only to ordinary care of the property, cited Jones on Bailments, 119; Edwards on Bailments, § 86; Hunt v. Wyman, 100 Mass. 199; Mansfield v. Cole, 61 Ill. 191; McGregor v. McDevitt, 64 Ill. 261; Francis v. Schrader, 67 Ill. 272.

Mr. H. N. KEIGHTLEY and Mr. A. L. HUMPHREY, for appellee.

PLEASANTS, J.   This was a suit brought by appellee before a justice of the peace to recover the price of a horse alleged to have been sold by him to appellant and another, and appealed to the circuit court, resulting there in a verdict and judgment for the latter, upon his plea denying joint liability, and against appellant for the amount claimed.

The material facts appear to be that Colton, who resided at Galesburg, desired to purchase a gentle family horse, and was informed by one of the firm of Jones & Heagy of Knoxville (who were owing him and wanted to make a turn), that it was probable such an one might be got of Wise.  Thereupon his son Arthur, by his direction, went and asked Wise to let him take it to Galesburg for his father to see and try.   Wise consented, saying if it suited, he was to have an order on Jones & Heagy for $65, and if not it was to be returned, in case he did not call for it, by the night of the next day—which was Thurs-

Colton v. Wise.

day—or he would consider it sold; to which Arthur replied that he was busy, as the foreman was sick, and the chances were that he could not return it that week. Upon trial it proved unsatisfactory, and after keeping it until the evening of the following Saturday, in the expectation that Wise would call for it, Colton sent it in charge of a younger son to be delivered to Jones, if he would undertake to return it to the owner. Jones received the horse, led it into his yard, tied it to a wagon and fed it that night and through the next day; but on Monday morning it was gone, the halter having in some way come off. Wise then demanded the order of Colton, and being refused brought the suit. After the trial before the justice, Arthur Colton, having meanwhile learned where the horse was, got it and returned it to Wise, leaving it in his yard. Wise, after a short time turned it into the road, and that is the last that is shown of it.

There is no evidence in the record tending to prove that Arthur, at the time he took the horse or any other, had authority to bind his father by a contract to purchase it, or to return it within any definite time or in any particular manner. On the other hand, both he and his father swear that he was merely directed to ask Wise to bring or send it over for the latter to see and try; and all that he said to appellee on that occasion so indicated.

Here, then, was simply an option on the part of appellant to purchase the horse if he liked it upon trial—which made the delivery a bailment and not a sale. Hunt v. Wyman, 100 Mass. 199. So that the theory upon which this recovery was sought and had has no foundation in the evidence.

And the bailment, which was not gratuitous in character, but contemplated mutual benefit, imposed upon appellant only the obligation of ordinary care about the keeping and return of the animal.

This rule is too familiar to require a citation of authorities. We discover no want of that degree of care on his part. He might as well entrust it to two agents to return—one to take it a part of the way and the other the rest—as to one to take it the whole way, provided they were both duly careful; and

we see nothing in his keeping it until Saturday evening, or in his delivering it to Jones as his agent to return it to Wise, or in the conduct of Jones in that behalf that is wanting in duty to the appellee.

If, therefore, the verdict had been rendered for a breach of the contract of bailment, it would have been equally unsupported by the evidence. With reference to this theory of the case, we think the modification of the second and the refusal of the fourth, of the series of instructions asked by the defendant, were erroneous.

For these reasons the motion for a new trial should have been granted. We observe also that some of the instructions given for the plaintiff were faulty in assuming the agency and authority of Arthur.

The judgment is reversed and the cause remanded.

.Reversed and remanded.